J-S47033-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JONATHAN ALLAN O'BRIAN, | : | |
| | : | |
| Appellant | : | No. 72 MDA 2020 |

Appeal from the Judgment of Sentence Entered November 25, 2019
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003612-2018

BEFORE:    STABILE, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED FEBRUARY 19, 2021**

Jonathan Allan O'Brian (Appellant)[1] appeals from the judgment of sentence imposed on November 25, 2019, after he was found guilty of rape of a child, involuntary deviate sexual intercourse (IDSI) with a child (two counts), unlawful contact or communication with a minor – sexual offenses, indecent assault of person less than 13 years of age, corruption of minors, and indecent exposure. We affirm.

The charges stem from Appellant's sexual abuse of his stepdaughter (Stepdaughter) when she was around seven or eight years old. Appellant's relationship with Stepdaughter's mother (Mother) began in 2014. Appellant and Mother subsequently married and had a child. Appellant and Mother

---

[1] We have changed the caption to reflect the correct spelling of Appellant's last name, which is O'Brian instead of Obrian.

*Retired Senior Judge assigned to the Superior Court.

resided together with that child and Mother's two other children (*i.e.*, Stepdaughter and Stepdaughter's sister).[2]

In early June 2018, Stepdaughter disclosed the sexual abuse to a friend at school. Police were notified, and they interviewed Stepdaughter on June 5, 2018. Stepdaughter underwent a forensic interview on June 6, 2018, where she made further disclosures. Appellant, who is an over-the-road truck driver, was away for work when the investigation began. When he returned to the area on June 8, 2018, police interviewed him in an emergency room of a hospital. Appellant had gone to the hospital for treatment of a laceration to his head, which was an injury he sustained in an incident unrelated to this case. During the recorded interview, Appellant denied abusing Stepdaughter. Before he left the hospital, police arrested him and charged him with the above-referenced crimes.

On September 7, 2019, which was the first day of trial, Appellant filed and presented a motion to suppress the recorded interview he gave to police at the hospital, arguing the police subjected him to custodial interrogation without warnings pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966). The trial court denied the motion, and the case proceeded to a two-day jury trial immediately thereafter.

---

[2] Appellant and Mother later had a second child together who was born at some point following Appellant's arrest but prior to sentencing.

Stepdaughter testified at trial regarding the abuse. She described being abused in Appellant's truck and their home while Mother and the other children were running errands. Stepdaughter testified Appellant would forbid her from going on errands with Mother and the other children as a punishment; the only way to get out of the punishment was to perform sexual acts with Appellant. Specifically, Appellant made Stepdaughter perform fellatio on him and penetrated her vagina and anus with his penis.

In addition to other witnesses, the Commonwealth presented the testimony of Detective Jeffrey Corcoran. The detective testified regarding his investigation and summarized the statement Appellant had provided to him at the hospital. The Commonwealth did not seek to introduce a recording or transcript of the statement. At the end of the trial, the jury returned a guilty verdict on all charges.

On November 25, 2019, Appellant was sentenced to an aggregate term of 30 to 60 years of incarceration, followed by a 10-year term of probation. Specifically, the trial court sentenced Appellant to separate, consecutive 15-to-30 year terms of incarceration for rape of a child and one count of IDSI. It also sentenced Appellant to one concurrent 15-to-30 year term of incarceration for the second count of IDSI; one consecutive 10-year term of probation for unlawful contact with a minor; and no further penalty for his three remaining convictions.

Appellant timely filed a post-sentence motion, which the trial court denied on December 11, 2019. Appellant timely filed a notice of appeal.[3] On appeal, Appellant raises two issues. Appellant's Brief at 7.

The first issue asks this Court to decide whether the trial court erred by failing to suppress Appellant's statement to police based upon his contention that the statement was elicited by custodial interrogation without **Miranda** warnings. **Id.** Accordingly, we review this issue with the following in mind.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Prisk**, 13 A.3d 526, 530 (Pa. Super. 2011) (citation omitted).

On appeal, Appellant argues that any statements he provided to police at the hospital should be suppressed because he was subject to custodial interrogation and was not free to leave the hospital. Appellant's Brief at 29-35. He focuses on several factors he believes distinguish his case from other cases where this Court has upheld the denial of a suppression motion based on a police interview of a suspect in a hospital setting.

---

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

First, Appellant argues there was no indication the police asked hospital staff for permission to speak to him while he was at the hospital seeking emergency medical treatment. He points to an instance during the interview where he contends an emergency room nurse was "subservient" to the police regarding whether she could proceed with treatment. *Id.* at 35. He next argues the interview was conducted in a room with no other persons present and police overruled Appellant's express wish for Mother to be present. Finally, he emphasizes the evidence police had already gathered, arguing this showed that police planned to arrest Appellant regardless of the outcome of the questioning. *Id.* He contends police "conducted a lengthy interrogation that was confrontational in tone." *Id.* According to Appellant, all of these factors indicate that Appellant was subjected to an unlawful custodial interrogation because he was not given *Miranda* warnings.

*Miranda* safeguards attach once a person is in custody and subjected to "express questioning or its functional equivalent." *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa. Super. 2008). "[I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances." *Id.*

> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [his or her] freedom of action in any significant way or is placed in a situation in which [he or she] reasonably believes that [his or her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual

being interrogated reasonably believes [his or her] freedom of action is being restricted.

Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Id.* at 30-31 (citations and quotations omitted).

In the instant case, for purposes of the suppression motion, Appellant's counsel stipulated, with one addition, to the Commonwealth's summary of a police report describing the interview in lieu of Detective Corcoran's testimony. N.T., 9/7/2019, at 73-74. The summary was not extensive and left out key details, such as the content of the questions, the length of the interview, and more specifics about the location of the interview within the hospital. The trial court may have had access to those details, as it had listened to the recorded interview in the presence of counsel for the Commonwealth and Appellant during a pre-trial conference on September 6, 2019. *See* N.T., 9/7/2019, at 79 (statement by the trial court during argument on the motion referencing the audio recording); Appellant's Motion to Supplement the Record, 7/8/2020, at 1 (referencing the pre-trial conference). However, there is no transcript of that conference or further details about what transpired. Moreover, the audio recording of Appellant's interview was not made part of the record.

Subsequent to Appellant's appeal, upon Appellant's motion and with the consent of the Commonwealth, the certified record was supplemented with a transcript prepared by defense counsel of two snippets of the taped interview. The portions provided by counsel cover five minutes of the interview. *See* Appellant's Motion to Supplement the Record, 7/8/2020, at Exhibit A. Counsel's motion to supplement the record acknowledged that the taped interview does not appear in the certified record, yet counsel did not seek to include the entirety of the interview.

This failure impedes our appellate review. It is indisputable that "[t]he fundamental tool for appellate review is the official record of the events that occurred in the trial court." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*). This Court may consider only the materials in the certified record when resolving an issue. *Id.* Our scope and standard of review require us to review whether the trial court's findings are supported by the record and the propriety of its legal conclusion that under the totality of the circumstances Appellant was not in custody. *See Prisk*, 13 A.3d at 530; *Williams*, 941 A.2d at 30. This is a task that we cannot complete meaningfully without all of the evidence the trial court reviewed to rule on the suppression motion. Without the entire interview, we are unable to determine whether the snippets counsel provided are isolated incidents or reflective of the entire tenor of the interview, or whether those incidents are outweighed by other factors.

"Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Preston**, 904 A.2d at 8 (citing **Commonwealth v. Kleinicke**, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*)).

> In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, exhibits, letters, writs or PCRA petitions that well may have been presented to the trial court but never were formally introduced and made part of the certified record.

**Preston**, 904 A.2d at 7-8. Appellant does not argue that the Commonwealth failed to introduce sufficient facts to support the constitutionality of the interview by failing to introduce the interview as an exhibit at the suppression hearing; instead, he assumes the video was before the trial court and relies upon them to make his appellate argument that he was in custody. Because Appellant was aware that the entire interview was not part of the certified record and did not ensure that this Court had access to it, his first issue regarding the denial of his suppression motion is waived. **See Commonwealth v. Manley**, 985 A.2d 256, 263-64 (Pa. Super. 2009) (finding suppression issue waived because Appellant failed to ensure item at issue was part of the certified record).

Appellant's second issue questions whether the trial court abused its discretion by sentencing Appellant to an unreasonable and manifestly excessive sentence inconsistent with the protection of the public, rehabilitation of Appellant, and gravity of the offenses. Appellant's Brief at 36-41. This issue involves a challenge to the discretionary aspects of his sentence.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, preserved the issue in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we now consider whether Appellant has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were

either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant contends that his sentence is excessive because the trial court ran his sentences consecutively, resulting in a minimum 30-year aggregate sentence of incarceration. He argues this minimum sentence combined with his age of 50 constitutes a *de facto* life sentence. Appellant's Brief at 22. This does not present a substantial question. *Commonwealth v. Radecki*, 180 A.3d 441, 470 (Pa. Super. 2018) (holding that assertion that consecutive sentences were excessive based on length combined with defendant's age and health did not constitute a substantial question).[4] Appellant also argues that the trial court focused solely on the nature of the crimes and the need for punishment, to the exclusion of other statutorily-mandated sentencing factors, such as his rehabilitative needs and the protection of society. Appellant's Brief at 22. This does present a substantial question. *See Commonwealth v. Macias*, 968 A.2d 773, 776

---

[4] The author of this memorandum notes that he has written previously regarding his continuing dissatisfaction with the state of the law in this Commonwealth regarding consecutive sentences. *See Commonwealth v. Zirkle*, 107 A.3d 127, 136 (Pa. Super. 2014) (Strassburger, J., concurring) (inveighing against virtual unfettered discretion provided to trial judges in this Commonwealth as to imposition of consecutive or concurrent sentences, which is exacerbated by the substantial question doctrine). This continues to be this author's personal stance on our jurisprudence.

(Pa. Super. 2009) ("[A]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question."). Accordingly, we will proceed to review this challenge to his sentence, mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. DiClaudio*, 210 A.3d 1070, 1074-75 (Pa. Super. 2019) (quoting *Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)); *see also* 42 Pa.C.S. § 9781(d).

> Sentencing in Pennsylvania is individualized, and requires the trial court to fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[.]" 42 Pa.C.S.[] § 9721(b). The trial court must also consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. *Id.*

*Commonwealth v. Baker*, 72 A.3d 652, 663-64 (Pa. Super. 2013).

- 11 -

The Sentencing Code sets forth express standards depending on the circumstances at hand. *Id.* In this case, Appellant's individual 15-to-30-year sentences were within the standard range of the sentencing guidelines for rape of a child and IDSI with a child less than 13 years of age. *See* 204 Pa. Code § 303.16(a) (setting the guideline range at 6 years to the statutory limit); 18 Pa.C.S. § 3121e(1) (setting the maximum penalty for rape of a child at 40 years' incarceration); *id.* at § 3123(b) (setting the maximum penalty for IDSI with a child less than 13 at 40 years' incarceration). Because the sentences are within the standard range, we must affirm the sentences unless the sentences are "clearly unreasonable." 42 Pa.C.S. § 9781(c) (requiring us to vacate a sentence within the guidelines if the case "involves circumstances where the application of the guidelines would be clearly unreasonable"; in all other circumstances not outlined by subsection (c), we "shall affirm the sentence imposed by the sentencing court").

In arguing that the trial court's sentence was clearly unreasonable and focused solely on punishing Appellant due to the severity of the crimes, Appellant highlights three statements the trial court made at sentencing. The first referred to Stepdaughter's description of the abuse as "a nightmare that is beyond imagination"; the second referred to each crime as "an entirely different set of brutality"; and the third explained the trial court's decision to prohibit Appellant from having contact with his own children by stating, "I just can't think of a more disturbing fact situation[.]" Appellant's Brief at 39

(quoting N.T., 11/25/19, at 9-10, 13). Appellant argues that these statements illustrate the trial court's sole desire to punish him instead of taking into account mitigating factors such as his age, a record of only one prior criminal offense (a misdemeanor for stalking), and his experience of being relinquished to an orphanage by his parents, who were poor, and being adopted at age ten after several years in the orphanage. *Id.*

Appellant's contention that the trial court solely considered the severity of the crimes is belied by the record. The trial court made the following comments upon sentencing Appellant.

> Well, indeed, this [c]ourt had the opportunity to observe the testimony through the course of the trial, and I too would have to concur it was the most compelling and at times terrifying testimony from a young lady who was convincing, heartfelt, and described, essentially, a nightmare that is beyond imagination. And I'm not saying that lightly. Through the course of the trial, I don't think there was a dry eye on the jury during that period of time.
>
> And I know you maintain your innocence, which is your right, and you compelled the witness to testify against you, under your right to compel and confront your accusers, so I take no adverse inference from that. But you're about to receive a sentence and part of your ability to ever see parole will depend on your cooperation in the treatment regimen, which at some point will require some level of acknowledgment of what you've done. So if you're indeed innocent, that's the battle you have to fight going forward. If you're not, pretending to be innocent would be detrimental to your possible parole.
>
> I'm taking into consideration not only the details of what occurred, as far as the sexual acts, but the fact that they were all compelled from what appeared to be a completely abusive misuse of parental authority – even though you were the stepfather - the devious use of punishment, and then her ability to earn her way out of that punishment. I am amazed that that young lady is still

able to function in the manner in which she does. And I too would say she's obviously had good counseling and good support so that she was able to endure this whole process.

And, therefore, looking at the guidelines, each one of those, as [the district attorney] points out, is just not another count. Each one of those is an entirely different set of brutality, and I take into consideration each one of these counts occurred more than once over a period of time, but it's even difficult to comprehend the level of torment that that young lady endured.

And, therefore, [I'm] taking into consideration the guidelines, taking into consideration that your prior record score is zero, although there is a misdemeanor stalking that is of concern in the larger scheme of things, taking into consideration the time you've already served in Dauphin County Prison, which is probably less pleasant than the time you will spend day by day in a state correctional institution, taking into consideration your age, as well as the circumstances contained in the presentence investigation, and taking into consideration the sentencing code and the various concerns that must be taken into consideration, including the protection of society.

N.T., 11/25/2019, at 9-11.

While the trial court chose to emphasize the severity of the crimes, in context its statements simply explain why it believed a lengthy sentence was warranted. To that end, it highlighted Appellant's egregious abuse of his parental role and the commission of multiple separate crimes. However, in addition to the severity of the crimes, the trial court expressly considered Appellant's age, his prior record score, the protection of society, and "the circumstances contained in the presentence investigation." *Id.* Furthermore, "[w]hen a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Baker*, 72 A.3d at 664.

Appellant has failed to convince us that the trial court's sentence was clearly unreasonable and an abuse of its discretion. Accordingly, no relief is due on Appellant's second issue, and we affirm his judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/19/2021